**William L. GRAY, Petitioner—Appellant,**

v.

**Joseph KLAUSER, Warden, Respondent—Appellee.**

No. 00–35732.
D.C. No. CV–98–00387–BLW.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 23, 2003.

Decided Jan. 9, 2004.

As Amended Jan. 21, 2004.

Stevan H. Thompson, Idaho Falls, ID, Maynard D. Grant, Seattle, WA, for Petitioner–Appellant.

L. LaMont Anderson, Kenneth K. Jorgensen, Office of Attorney General, Boise, ID, for Respondent–Appellee.

Before LAY,* TROTT, and BERZON, Circuit Judges.

## MEMORANDUM**

William Gray petitions for a writ of habeas corpus. The district court denied relief. The facts are familiar to the parties, so we recount them only as necessary to explain our decision.

Under 28 U.S.C. § 2254(d)(1) we may grant habeas relief for a claim adjudicated in a state court if—and only if—that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." When we initially considered Gray's appeal we concluded, under our then-applicable precedent, that the appellate court's failure to apply the pertinent Supreme Court precedent with respect to his fourth claim rendered the state decision "contrary to" that precedent. We therefore reversed the district court's decision on that ground. The Court has since clarified, however, that a state court's "fail[ure] to apply" Supreme Court precedent does not necessarily satisfy the "contrary to" prong of 28 U.S.C. § 2254(d), *Early v. Packer*, 537 U.S. 3, 123 S.Ct. 362, 366, 154 L.Ed.2d 263 (2002), and remanded this case for further consideration in light of that ruling, *Klauser v. Gray*, 537 U.S. 1041, 123 S.Ct. 658, 154 L.Ed.2d 512 (2002). Upon reconsideration this court now unanimously affirms the conviction.

Because our standard of review is pertinent only with respect to Gray's fourth and final claim, we combine our discussion of the appropriate AEDPA standard with our analysis of the merits of that claim. As to Gray's first three claims, we would deny relief even under de novo review.

### 1. Photo Line–Up

■ Assuming—without deciding—that the five-person photo array was somewhat suggestive, we are convinced that under the circumstances Mackay's eyewitness identification was sufficiently reliable to have been presented to the jury. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Mackay had a good opportunity to view the bicycle rider he later identified as Gray. As an on-duty security guard his attention level was high. His pre-line-up description was both fairly accurate and fairly certain (although Mackay did remember the man he identified as clean shaven, whereas Gray sported a beard). And finally, the period of time between Mackay's encounter with the mystery bicycle rider and the photo line-up was a brief three days. These factors suggest that there was no substantial likelihood of misidentification. *See Brathwaite*, 432 U.S. at 114–16.

### 2. Juror Polling

At Gray's request the trial court polled the jury members about their exposure to potentially adverse mid-trial publicity. In his brief to this court, Gray argued, as he had on direct appeal and in the federal district court on habeas, that the trial judge inadvertently bypassed one juror and that this failure denied him his right to an impartial jury. The state appeals court and the district court accepted the factual representation but held that there was no error of constitutional dimensions.

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

As Gray's appellate counsel acknowledged during oral argument, however, a careful reading of the transcript shows that the trial judge *did* poll each of the twelve jurors and two alternates. There was no error.

### 3. Betty Gray's Hearsay Statements

The trial court's inquiry into the trustworthiness preceding the introduction of Betty Gray's hearsay statements, while truncated in some respects, was sufficient under *Idaho v. Wright*, 497 U.S. 805, 815, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), to preclude a violation of the Confrontation Clause. The trial court found trustworthiness on the basis of some of the factors that the Supreme Court has approved as particularized guarantees of trustworthiness, including spontaneity, consistent repetition, state of mind, and lack of motive to fabricate (although each statement admitted did not have all these characteristics). *Id.* at 818–20.

### 4. Roundy's Hearsay Statements

The trial court's failure to admit Roundy's hearsay statements presents a closer question, which does turn on our standard of review. Gray introduced hearsay statements parallel, both in kind and in terms of the indicia of reliability that accompanied them, to the hearsay statements offered by the government. Whereas the trial court considered and admitted the government's evidence under Idaho's residual hearsay exception, Idaho R. Evid. 803(24), the court failed explicitly to explain why Gray's statements did not qualify under that same rule.

The Idaho appellate court did not recite the Supreme Court cases pertinent to Gray's Sixth Amendment and due process claim. It did, however, apply elements of the constitutional standard when it ruled that the evidence was insufficiently reliable to require a reversal of the trial court ruling. Thus, as in *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002), the state court analyzed the claim using state-law principles analogous to the constitutional standards. We therefore cannot say that the rule applied by the Idaho state court was "contrary to" Supreme Court precedent. *See Early*, 537 U.S. at 8. Rather, we defer to the state court ruling unless that ruling is objectively unreasonable. An objectively unreasonable result is something more than an erroneous, or even clearly erroneous, result. *See Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).

In *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), the Supreme Court summarized its precedents as having "found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *See also Valenzuela–Bernal*, 458 U.S. 858, 868–69, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) (in the area which "might loosely be called access to evidence," there is no constitutional violation unless the omitted evidence is "material" in the sense that it might have affected the outcome); *Greene v. Lambert*, 288 F.3d 1081, 1092–93 (9th Cir.2002) (holding that exclusion of evidence violates the right to present a defense where the evidence is of weighty importance to the defendant).[1]

---

1. *Scheffer* was not decided until *after* the Idaho appellate court denied Gray's claim. But given that the Supreme Court itself, in *Scheffer*, signaled that its prior precedent might include an independent "weighty interest" requirement, appending that requirement in 1997 was obviously a reasonable interpretation of then-existing Supreme Court precedent.

The state trial court did not give a full accounting of its reasons for determining the Roundy statements immaterial and the state appellate court did not reach the issue, given its view of the case. We therefore perform an independent review of the record but defer to the result reached by the state court. *See Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000); *Greene v. Lambert,* 288 F.3d 1081, 1084 (9th Cir.2002).

Our review of the record indicates that the materiality conclusion was not unreasonable, given (1) the defense counsel's acknowledgment that Dyer had an alibi that had been confirmed by the police; (2) the defense counsel's stated intention of using the Roundy statements not to suggest that Dyer was the killer but merely to highlight the inadequacy of the police investigation; and (3) the lack of any corroborating evidence tying Dyer to the murders. These considerations support the state trial court's determination that the statements were of such marginal probative value that they did not meet the materiality requirement of Idaho's residual hearsay exception. *See* Idaho R. Evid. 803(24). These same considerations establish that Gray is unable to meet *Scheffer*'s requirement that the interest served by the admission of the evidence be a "weighty" one. 523 U.S. at 315.

■ We therefore conclude that under AEDPA's deferential standard of review Gray's petition must be denied because the determination that the Roundy statements were not sufficiently material to overcome the hearsay rule was not objectively unreasonable.

Our conclusion is reinforced by our decision in *Perry v. Rushen,* 713 F.2d 1447 (9th Cir.1983), which held that the application of a California rule creating a heightened requirement for the admissibility of evidence of third-party guilt did not violate the constitution. *See* 713 F.2d at 1453–54.

In reaching its decision, *Perry* read the Supreme Court cases as holding that "a defendant must show that his interest clearly outweighs the state's before we will interfere with" the state's application of the rules of evidence. *See id.* at 1453. Balancing Idaho's interest here in excluding marginally material hearsay statements against the importance to Gray's defense of exposing the inadequacy of the police investigation, and applying AEDPA deference, we cannot say that the state court's determination, albeit implicit, that Gray did not meet this standard was objectively unreasonable.

The strength of Idaho's interest in excluding this type of evidence is not undermined by the state trial court's decision to admit the Betty Gray statements. Those statements, unlike the Roundy statements, were clearly material because they were corroborated by some evidence tending to connect Gray to the particular crime in question. *See* Idaho R. Evid. 803(24) (requiring the proffered statements to be evidence of a material fact).

Nor is the strength of the state's interest lessened by the court's decision to admit other third-party evidence offered by Gray, because that evidence, unlike the evidence regarding Dyer, was not hearsay and was therefore subject to a less stringent relevancy requirement. *Compare* Idaho R. Evid. 401 (relevant evidence generally admissible) *with* Idaho R. Evid. 803(24) (requiring materiality). Roundy's statements regarding Dyer implicated not only the state's interest in excluding potentially confusing and immaterial evidence, but also its interest in excluding immaterial hearsay evidence, and the state trial court's determination that such evidence was not sufficiently material to overcome the ordinary prohibition against hearsay was not unreasonable.

The reasonableness of the state trial court's determination that the Roundy

statements were insufficiently material is also bolstered by the imposition by many other jurisdictions of significant restrictions on the introduction of uncorroborated circumstantial evidence tending to implicate a third party. *See, e.g., Perry,* 713 F.2d at 1449 (describing California's rule); *Allen v. State,* 275 Ga. 64, 68, 561 S.E.2d 397 (Ga.2002) (excluding evidence of third party guilt under heightened relevancy standard); *Helmig v. State,* 42 S.W.3d 658, 671 (Mo.Ct.App.2001) (same); *Smithart v. State,* 988 P.2d 583, 586–87 (Alaska 1999) (describing Alaska's heightened admissibility requirement for third party evidence); *State v. Soto–Fong,* 187 Ariz. 186, 928 P.2d 610, 623 (1996) (en banc) (evidence of threats by third parties against victim inadmissible unless corroborated by evidence tying the third party to the crime charged). These authorities suggest that those jurisdictions view such evidence as something less than critical.[2]

Idaho courts do not apply a specialized rule in these circumstances, but deem third party evidence inadmissible " 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' " *State v. Kerchusky,* 138 Idaho 671, 67 P.3d 1283, 1287 (2003) (quoting Idaho R. Evid 403). Where, as here, such evidence is not corroborated by evidence linking the third party to the crime, however, it is considered to be of only "negligible" probative value. *Id.* at 1287 (holding that the district court did not abuse its discretion by excluding "negligbl[y] probative" third party evidence under Idaho R. Evid. 403). Idaho's Rule 403 thus embodies a concern, reflected in the cases from other states cited above and articulated by the Idaho Supreme Court in *State v. Larsen,* 91 Idaho 42, 415 P.2d 685 (1966), that evidence of third party guilt should not be admitted unless there is some evidence directly connecting the third party to the crime in question. *See Kerchusky,* 67 P.3d at 1286–87. Given the lack of any evidence here connecting Dyer to the murders, the state trial court's determination that Roundy's statements regarding Dyer were immaterial was not objectively unreasonable.

In view of the practice of many states and, more importantly, the particular circumstances of this case, we conclude that the Idaho courts' determination of Gray's challenge to the exclusion of the Roundy hearsay statements did not "involve an unreasonable application ... of clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**AFFIRMED.**

---

**2.** As we noted in *Perry,* however, "we do not doubt that is some situations application of [a state third-party evidence] rule would violate the Constitution." 713 F.2d at 1453.