# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35048

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Moscow, April 2009 Term |
| | ) | |
| v. | ) | 2009 Opinion No. 91 |
| | ) | |
| DAVID JOSEPH MEISTER, | ) | Filed: July 7, 2009 |
| | ) | |
| Defendants-Appellants. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| | ) | |

Appeal from the Second Judicial District of the State of Idaho, Latah County. Hon. John R. Stegner, District Judge.

The sentence is <u>vacated</u>, the conviction is <u>vacated</u> and this case is <u>remanded</u> for new trial.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Erik Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Rebekah Cudé argued.

---

W. JONES, J.

This case arises from the 2001 shooting death of Tonya Hart in Moscow, Idaho. David Meister was charged with first degree murder and conspiracy to commit murder; it was alleged that Meister shot Tonya in exchange for $1000. A jury convicted Meister on both counts, and Meister appealed. The court of appeals remanded the case for further proceedings and re-sentencing. The state petitioned this Court for review. This Court accepted review on the following issues: (1) whether this Court's decision in *State v. Larsen*, 91 Idaho 42, 415 P.2d 685 (1966) or I.R.E. 403 is the controlling authority for the admissibility of alternate perpetrator evidence, (2) whether I.R.E. 804(b)(3) contains a corroboration requirement for the admission of confessions of an alternate perpetrator, and (3) whether the district court violated Meister's right

1

to due process, right of appeal, and Fifth Amendment rights by threatening a harsher sentence if Meister refused to admit guilt.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 11, 2001 Tonya Hart was shot twice in her home in Moscow, Idaho, which she shared with her boyfriend Jesse Linderman. The shooter approached the front entrance of Tonya's trailer and then proceeded to the back entrance.[1] When Tonya opened the back entrance of the trailer she was shot twice, once in the chest and once in the face. The shooter then retreated behind the trailer, running through a snow covered field and eventually exiting the field on a nearby road. A neighbor heard the gun shots and went to Tonya and Jesse's trailer. He then called 911 and proceeded unsuccessfully with resuscitation efforts. Tonya was pronounced dead at the scene.

In August of 2002 the police interrogated David Meister in connection with Tonya's death and Meister confessed that he shot Tonya in exchange for a $1000 payment from Jesse Linderman.[2] Meister was charged with first degree murder and conspiracy to commit murder. Charges were initially filed against Linderman for conspiracy to commit murder but those charges were later dismissed because the only evidence tying Linderman to the crime was Meister's confession.

At trial Meister attempted to admit evidence that another individual, Lane Thomas, was responsible for Tonya's shooting. The district court refused any evidence which showed Thomas was an alternate perpetrator of the crime, including several confessions. A jury convicted Meister on both counts and the district court sentenced him to a fixed term of life for the murder conviction and a unified sentence of life with 40 years fixed for the conspiracy conviction.

## ISSUES ON APPEAL

1. Whether this Court's decision in *Larsen*, 91 Idaho 42, 415 P.2d 685 or I.R.E. 403 is the controlling authority for the admissibility of alternate perpetrator evidence.

2. Whether I.R.E. 804(b)(3) contains a corroboration requirement for the admission of Lane Thomas' confessions.

---

[1] The shooter's movement is based on footprints left in the snow.
[2] Meister later claimed that his confession was invalid because it was coerced, taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and the interrogation process was not video-taped. These claims are not presently before the Court.

3.      Whether the district court violated Meister's right to due process, right of appeal, and Fifth Amendment rights by threatening a harsher sentence if Meister refused to admit guilt.

## STANDARD OF REVIEW

"In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court." *State v. Oliver*, 144 Idaho 722, 724, 170 P.3d 387, 389 (2007). This Court freely reviews questions of law. Questions of relevancy are reviewed *de novo*. *State v. Zichko*, 129 Idaho 259, 264, 923 P.2d 966, 971 (1996). "Whether evidence is relevant is an issue of law." *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct. App. 1993). "The trial court has broad discretion in the admission of evidence, and its judgment will only be reversed when there has been an abuse of that discretion." *Zichko*, 129 Idaho at 264, 923 P.2d at 971. Thus, the inquiry is two-fold; we must first freely review and determine whether the proffered evidence is relevant, and secondly we evaluate whether the district court abused its discretion in determining whether the probative value was outweighed by unfair prejudice. *Atkinson*, 124 Idaho at 819, 864 P.2d at 657.

## ANALYSIS

The alternate perpetrator evidence that Meister attempted to admit at trial consists of Lane Thomas' confessions and evidence which tends to suggest that Lane Thomas was the actual perpetrator of the crime.[3] Thomas' confessions and evidence which tends to implicate him in the shooting of Tonya are governed by two standards under Idaho law. This Court must first determine the standard for admission of alternate perpetrator evidence. Although Thomas'

---

[3] Meister submitted an offer of proof seeking to admit the following evidence: (1) an approximation of what time the shooting occurred; (2) Thomas was familiar with and grew up near the road where the shooter exited the field; (3)Thomas and Hart had previously been involved in an altercation; (4) Thomas and Linderman had previously been involved in a drug sale which resulted in Linderman being robbed and assaulted; (5) Linderman made statements to police after the shooting that Thomas was no longer allowed at the trailer he shared with Tonya due to their adversarial relationship; (6) Thomas admitted to police that he had stolen a briefcase of marijuana which was found on the road where the shooter exited the field; (7) Thomas generally meets the description of the male seen walking on the road the night of the shooting; (8) Thomas went to his sister's house to sleep on her sofa the night of the shooting and that she thought Thomas was lying and was involved in the shooting; (9) Thomas' wife told Thomas' sister and her husband that if they talked to police "they would be next;" (10) Thomas voluntarily submitted a written statement to police that he had been on the road where the shooter exited the field on the night of the shooting; (11) Thomas' criminal record; (12) Thomas' confession to a fellow inmate that he was involved in the shooting; (13) Thomas' confession to a second inmate that he was involved in the shooting; (14) Thomas' twin brother burned a bag of clothes in the weeks following the shooting; (15) Thomas' twin brother generally meets the eyewitness description of the male seen walking on the road the night of the shooting; and (16) Thomas' twin brother now resides at a psychiatric institution.

3

confessions are included under the umbrella of alternate perpetrator evidence, the confessions also constitute hearsay. Therefore, the confessions must then be analyzed for admission pursuant to the hearsay rules. The State argues that all of the evidence in Meister's offer of proof is inadmissible pursuant to various evidentiary rules. The State's motion *in limine* seeking exclusion of all alternate perpetrator evidence was granted; therefore, Meister's counsel was never afforded the opportunity to lay the foundation properly for any of the evidence. This Court will refrain from acting as a fact-finder and makes no determination as to whether the evidence is admissible.

The right to present a defense is protected by the Sixth Amendment of the United States Constitution and made applicable to the states through the due process clause of the Fourteenth Amendment. *Washington v. Texas*, 388 U.S. 14, 19 (1967). "This right is a fundamental element of due process of law." *Id.* The right to present a defense includes the right to offer testimony of witnesses, compel their attendance, and to present the defendant's version of the facts "to the jury so it may decide where the truth lies." *Id.* However, this right must be balanced against any interest the state has in the criminal trial process; "the Sixth Amendment 'does not confer the right to present testimony free from the legitimate demands of the adversarial system.'" *State v. Albert*, 138 Idaho 284, 287, 62 P.3d 208, 211 (Ct. App. 2002) (quoting *Taylor v. Illinois*, 484 U.S. 400, 412-13 (1988)).

In the present case, Meister was not afforded the opportunity to provide a full and complete defense for the crimes of which he was accused. The district court applied the wrong standard for the admission of the alternate perpetrator evidence; therefore, this Court vacates Meister's conviction and remands this case for a new trial.

**I.R.E. 403 is the controlling authority for the admissibility of alternate perpetrator evidence**.

This Court addressed the issue of whether a defendant is entitled to present evidence of an alternate perpetrator in *Larsen*, 91 Idaho 42, 415 P.2d 685. The Court held that a defendant must produce a "train of facts or circumstances, as tend clearly to point out some one besides the [defendant] as the guilty party." *Id.* at 47-48, 415 P.2d at 690-91. It requires more than just "conjectural inferences" that a party other than the defendant committed the crime. *Id.* at 48, 415 P.2d at 691. In 1985, the Idaho Rules of Evidence were adopted which established that all relevant evidence is admissible, unless otherwise provided by the Idaho Rules of Evidence or

other rules for the courts of Idaho.[4]  I.R.E. 402.  "These rules govern all actions, cases and proceedings in the courts of the State of Idaho."  I.R.E. 101(b).  This Court is presented with the inquiry of whether alternate perpetrator evidence is subjected to a different standard for admission than all other evidence; that is, whether *Larsen* or I.R.E. 403 governs the admission of alternate perpetrator evidence.  This Court finds that *Larsen* was implicitly overruled when the Idaho Rules of Evidence were adopted in 1985.

The court of appeals addressed a similar issue in *State v. Kerchusky*, 138 Idaho 671, 67 P.3d 1283 (Ct. App. 2003).  There the court stated that a review of excluded evidence requires an inquiry as to whether the trial court abused its discretion in excluding the evidence pursuant to I.R.E. 403.  *Kerchusky*, 138 Idaho at 675, 67 P.3d at 1287.  However, the court ultimately concluded that the evidence offered by the defendant was properly excluded because it "was of negligible probative value, and . . . the district court did not abuse its discretion by excluding the evidence pursuant to the 'direct connection doctrine' and I.R.E. 403."  *Id.* at 676, 67 P.3d at 1288.  The Ninth Circuit has interpreted *Kerchusky* as standing for the proposition that "[I.R.E.] 403 thus embodies a concern, reflected in the cases from other states . . . and articulated by the Idaho Supreme Court in [*Larsen*], that evidence of third party guilt *should not be admitted* unless there is some evidence directly connecting the third party to the crime in question."  *Gray v. Klauser*, 86 Fed. Appx. 279, 2004 WL 61243, at *4 (9th Cir. 2004) (unpublished opinion) (emphasis added).  But, the Ninth Circuit also stated that "Idaho courts do not apply a specialized rule in [the admission of alternate perpetrator evidence], *but deem third party evidence inadmissible*" if it does not meet the requirements of I.R.E. 403.  *Id.* (emphasis added).[5] Therefore, it remains unclear whether the court of appeals of this state applies *Larsen*, I.R.E. 403, or a combination thereof when reviewing the admissibility of alternate perpetrator evidence.

As previously stated, this Court adopts an approach which holds that the Rules of Evidence generally govern the admission of *all evidence* in the courts of this State.  The Rules of Evidence generally include all relevant evidence, whereas *Larsen* generally excluded alternate perpetrator evidence regardless of relevance.  The Rules of Evidence embody the balancing test which safeguards a defendant's constitutional right to present a defense along with protection of the state's interest in the integrity of the criminal trial process.  For instance, I.R.E. 412 employs

---

[4] It is noted that while the Rules of Evidence provide for the inclusion of all relevant evidence, *Larsen* dictated that alternate perpetrator evidence, regardless of relevance, was generally excluded.

[5] Both these statements interpret alternate perpetrator evidence as generally excluded.

a two-part test to evaluate whether a defendant's Sixth Amendment right to a defense is violated in light of I.R.E. 412.[6] *State v. Self*, 139 Idaho 718, 722, 85 P.3d 1117, 1121 (Ct. App. 2003). "First, the trial court must consider whether the evidence proffered is relevant. If it is not relevant, the defendant has no constitutional right to present it. If the evidence is relevant, the trial court must ask whether other legitimate interests outweigh the defendant's interest in presenting the evidence." *Id.* Due to the highly sensitive nature of sex crimes in general, this standard has been found to effectively balance the state's interest in protecting victims of sex crimes from disclosing their past sexual behavior except in limited circumstances and the defendant's interest in presenting a defense for the crimes of which s/he is accused.

The Rules of Evidence properly protect the trial court's discretion to limit relevant evidence if the probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." I.R.E. 403. The Rules effectively address the concerns from *Larsen*. The *Larsen* Court was concerned that a defendant will attempt to admit evidence where the sole purpose is to infer that an individual other than the accused committed the crime. If the defendant proffers evidence which merely tends to mislead the jury that another person committed the crime, or the evidence is not relevant because it does not tend to make the defendant's involvement more probable or less probable, then it is within the trial court's discretion to find the evidence inadmissible. Mere inferences that another person *could* have committed the crime will most likely not be relevant, and if relevant will still be subject to the limitation provisions of I.R.E. 403. "A defendant has no right to present irrelevant evidence and even if evidence is relevant, it may be excluded in certain cases." *Self*, 139 Idaho at 722, 85 P.3d at 1121. The Idaho Rules of Evidence effectively safeguard against the admission of "conjectural inferences" without the lower courts needing to apply the *Larsen* direct connection doctrine. This Court finds that *Larsen* was implicitly overruled by the adoption of the Idaho Rules of Evidence.

In the present case, the court's ruling does not address whether the evidence is relevant and admissible pursuant to I.R.E. 401, 402 or 403. Instead, the court ruled that any evidence

---

[6] I.R.E. 412 applies to sex crimes and dictates the test for whether a victim's past sexual behavior is relevant and whether that evidence should be admissible. That is, if the evidence is deemed relevant pursuant to I.R.E. 412(b), a different standard than relevance pursuant to I.R.E. 401, then it will be admissible if "the probative value of such evidence outweighs the danger of unfair prejudice." I.R.E. 412(c)(3).

relating to Lane Thomas as an alternate perpetrator was inadmissible pursuant to this Court's decision in *Larsen*. This finding was in error. The court refused the request of the defense to call Lane Thomas as a witness and any witness which may impeach Lane Thomas' testimony, or to present any evidence which would tend to show that a person other than Meister committed the crime. By excluding all this evidence from being presented in any context throughout the course of trial the district court prevented Meister from presenting potentially relevant facts that may have developed throughout the course of the trial. Meister should be afforded the opportunity to present his complete and full defense, which includes the presentation of all relevant evidence in the context of trial pursuant to any limitations of the Idaho Rules of Evidence. The district court erred by applying the wrong standard for admissibility of alternate perpetrator evidence, and therefore, abused its discretion. Therefore, this Court grants Meister a new trial.

**Lane Thomas' confessions must meet the standards of I.R.E. 804(b)(3) in order to be admissible**.

Trial counsel and the district court applied this Court's standard in *Larsen* for a determination of whether Thomas' confessions were admissible. The application of *Larsen* is incorrect because it was implicitly overruled by this Court's adoption of the Idaho Rules of Evidence. Therefore, whether Thomas' confessions should have been admitted is dictated by I.R.E. 401, 402, 403 and 804(b)(3).

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." I.R.E. 801(c). Hearsay is not admissible unless it falls under an exception in the Idaho Rules of Evidence or another rule formulated by the Idaho Supreme Court. I.R.E. 802. A statement is not hearsay if the declarant is unavailable as a witness and it is

> [a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject declarant to civil or criminal liability, or to render invalid a claim by declarant against another, that a reasonable man in declarant's position would not have made the statement unless declarant believed it to be true. *A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement*.

I.R.E. 804(b)(3) (emphasis added). These corroborating circumstances are necessary and must "clearly indicate the trustworthiness of the statement." *State v. Priest*, 128 Idaho 6, 16-17, 909

7

P.2d 624, 634-35 (Ct. App. 1995).  Several confessions may act to corroborate each other. *Chambers v. Mississippi*, 410 U.S. 284, 300 (1973) (listing several factors that would provide considerable assurance that hearsay statements are reliable, including "[t]he sheer number of independent confessions provided additional corroboration for each.")

The court of appeals dealt with the present issue in *State v. Meister*, 2007 WL 2821981 (Ct. App. 2007) (unpublished opinion) by adopting Arizona's standard in *State v. LaGrand*, 153 Ariz. 21, 28, 734, P.2d 563, 570 (Ariz. 1987).  In *LaGrand,* the Arizona supreme court established seven factors[7] for determining the reliability and corroboration of a statement subjected to the hearsay exception established in 804(b)(3).  *Id.* at 27-28, 734 P.2d at 569-70. The court ultimately held that "a judge's inquiry, made to assure himself [or herself] that the corroboration requirement of Rule 804(b)(3) has been satisfied, should be limited to asking *whether evidence in the record corroborating and contradicting the declarant's statement would permit a reasonable person to believe that the statement could be true*."  *Id.* at 28, 734 P.2d at 570 (emphasis added).  This will protect the province of the jury as the fact-finder and prevent the judge from "be[ing] able to bootstrap himself [or herself] into the jury box via evidentiary rules."  *Id.*  This Court adopts Arizona's standard and seven factor test for the corroboration requirement pursuant to I.R.E. 804(b)(3).

The offer of proof and the record contain two reports from people who heard Lane Thomas confess to the Tonya Hart shooting.  One is a police report taken from an inmate in Spokane County.[8]  The other is a handwritten statement taken by the Latah County Sherriff's Office along with the officer's notes.[9]  Additionally, Thomas made a third inculpatory statement

---

[7] Those factors are: (1) whether the declarant is unavailable; (2) whether the statement is against the declarant's interest; (3) whether corroborating circumstances exist which clearly indicate the trustworthiness of the exculpatory statement, taking into account contradictory evidence, the relationship between the declarant and the listener, and the relationship between the declarant and the defendant; (4) whether the declarant has issued the statement multiple times; (5) whether a significant amount of time has passed between the incident and the statement; (6) whether the declarant will benefit from making the statement; and (7) whether the psychological and physical surroundings could affect the statement. *LaGrand*, at 27-28, 734 P.2d at 569-70.

[8] According to the statement Thomas disclosed the following information: (1) Thomas knew Tonya because he used to buy drugs from Linderman at the Hart-Linderman trailer; (2) Thomas and another individual went to the trailer the night of the shooting, knocked on the front door and then ran to the back door; (3) Thomas saw the other individual shoot Tonya in the face and the chest; (4) the two then ran across a field and over a fence and drove away in Thomas' car.

[9] According to the officer's notes Thomas disclosed the following information: (1) Thomas frequently talked about Tonya's shooting; (2) Thomas referred to himself as "framed by law enforcement;" (3) Thomas was continually upset about being under suspicion for the shooting of Tonya; (4) around June 2002 Thomas' "tone had changed" when he spoke about the shooting; (5) Thomas then began to brag about the information he had regarding the shooting; (6) Thomas said that law enforcement would not be able to link him to the shooting; (7) Thomas laughed

after Meister's conviction which is contained in Meister's motion for a new trial. The first two confessions were made by Thomas to fellow inmates at the Whitman County Jail. The inculpatory statement was made as a threat to a woman who was owed money by Thomas. [10] All three of the statements tend to implicate that Thomas was the person or one of the people responsible for the shooting death of Tonya.

The district court ruled *in limine* that the defense would not be allowed to call Lane Thomas to testify or be allowed to call the persons who heard the confessions potentially to impeach any testimony provided by Lane Thomas. When defense counsel asked for the basis of the court's ruling the court replied "I think I've given it." The court did not issue a written order memorializing the basis of its decision. The only authority discussed during the motion hearing was this Court's decision in *Larsen*. Although the district court applied the wrong standard to determine whether the statements were admissible, the district court did make a finding that the evidence presented in the offer of proof did not sufficiently corroborate the evidence. Therefore, the district court correctly found that some corroboration is necessary in order for the statements to be admissible. The governing standard of whether a third-party's statements tending to inculpate the declarant and exculpate the accused is governed by I.R.E. 804(b)(3). Further, this Court adopts Arizona's test for a trial court to determine whether the third-party confessions are sufficiently corroborated in accordance with I.R.E. 804(b)(3); that test being, whether evidence in the record corroborating and contradicting the declarant's statement would permit a reasonable person to believe that the statement could be true. This test is desirable because it prevents the trial judge from substituting himself or herself as the ultimate fact-finder. If the statements clearly establish trustworthiness through corroborating evidence it is within the province of the jury to weigh the testimony and determine where the truth lies. The district court applied the wrong standard to determine whether Lane Thomas' confessions should be excluded.

---

when he received an "apology letter" from the Sheriff's office; (8) Thomas showed the inmate the letter; (9) Thomas said "they'll never catch me;" (10) Thomas openly discussed his dislike for Linderman and Tonya; (11) Thomas had been at the Hart-Linderman trailer the night of the shooting intending to steal drugs from Tonya because Thomas had been "ripped off" by Linderman.

[10] The police report contains the following information: (1) the woman "rudely" asked Thomas to repay his debt; (2) Thomas approached her house one night when the girl was alone at home; (3) the girl picked up a baseball bat before answering the door because she was afraid of Thomas; (4) Thomas threatened to burn down her house; (5) Thomas said he had killed a woman and it would not be "hard" to kill again; (6) Thomas said that another individual was in prison and serving time for the murder of the woman that Thomas killed; (7)Thomas then told her "that she was one of the top three women he would rape."

**Whether the district court violated Meister's right to due process, right of appeal, and Fifth Amendment rights by threatening a harsher sentence if Meister refused to admit guilt**.

We decline to address this issue because Meister's sentence has been vacated and this case is remanded for a new trial.

## CONCLUSION

For the foregoing reasons this Court vacates Meister's conviction and sentence and remands this case for a new trial.

Chief Justice EISMANN, Justices BURDICK, J. JONES and HORTON, CONCUR.