IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39564

| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 640 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: August 27, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| BENSON BARRERA, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Darla S. Williamson, District Judge.

Judgment of conviction for aggravated assault, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

---

MELANSON, Judge

Benson Barrera appeals from his judgment of conviction for aggravated assault. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

This case arose from an incident where Barrera head-butted a man during a verbal altercation. The head-butt resulted in a gash above the left eye of the victim. The state originally charged Barrera with aggravated battery, but later amended the charge to aggravated assault. I.C. §§ 18-901, 18-905(a). The following evidence was adduced at jury trial.

In 2010, Barrera and the wife of the victim began an intimate relationship. A few months later, the victim encountered Barrera in a restaurant. The victim, aware Barrera was the man having an affair with his wife, asked Barrera to step outside and talk. The two exchanged words outside and subsequently parted ways. A few weeks later, Barrera and the victim crossed paths

1

again. This meeting also consisted of the two exchanging words and ended without violence. The intimate relationship between Barrera and the victim's wife ended in May or June of 2010.

On January 15, 2011, the victim encountered Barrera a third time while in downtown Boise. Barrera contended that he first happened upon the victim at a bar and that, as the victim passed by him, the victim insulted Barrera using vulgar invective. Barrera testified that the comment bothered him, but he did not respond. After seeing the victim, Barrera exchanged a number of text messages with the victim's wife.

Barrera, who was with two friends, a date, and his date's friend, left the bar around 2:00 a.m. and headed to an eatery across the street. As Barrera and his friends sat inside the eatery, the victim and his friends also entered. The victim and Barrera engaged in another verbal altercation, during which an employee of the eatery threatened to call the police. Both men left separately with their respective friends.[1]

As the victim and his friends began walking in the direction of the victim's car,[2] they again encountered Barrera. According to the victim, after a brief exchange of words, Barrera took off his coat and grabbed the victim by his shirt. Barrera lost his grip on the victim's shirt, after which Barrera grabbed the victim by the neck and head-butted him. The skin above the victim's eye split open and blood began running down the victim's face. Barrera's version of events differed in that he claimed the victim grabbed him first and Barrera then grabbed hold of the victim. Barrera also testified that his head accidently made contact with the victim's head while Barrera was being restrained from behind and attempting to pull free. After the blow to the victim's head, the parties separated Barrera and the victim. The victim sought medical attention the next day when he became concerned about the severity of his wound. At the hospital, medical personnel notified police and the victim subsequently made a statement regarding the incident. A jury found Barrera guilty of aggravated assault. The district court granted Barrera's request for a withheld judgment and placed him on probation for five years. Barrera appeals.

---

[1] Barrera's date and her friend had previously departed during the verbal altercation.

[2] At trial, the victim testified that his car was parked elsewhere, but that he walked in the direction he did because of his usual practice of parking on that street.

## II.

## ANALYSIS

### A.     Sufficiency of the Evidence

Barrera argues that the evidence adduced at trial was insufficient to support a conviction for aggravated assault because it did not establish that the head-butt constituted a means or force likely to produce great bodily harm. The state argues that sufficient evidence was provided at trial from which the jury could find Barrera committed an aggravated assault.

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the state sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the state. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

Aggravated assault, as pertinent here, requires a showing that the defendant committed an assault by "any means or force likely to produce great bodily harm." I.C. § 18-905(b). At trial, the state presented evidence that Barrera intentionally struck his head against the victim's. The state further produced expert testimony from an emergency room physician with extensive experience in treating critical injuries. This physician testified that his specialty was emergency medicine and that he had previously worked in a trauma center, dealing with the most critical and severely injured patients. While working there, he observed numerous head-butt cases. The physician testified that head-butt cases come to the emergency room because the "potential for the significance of the mechanism does potentially lend itself to some significant injury."

The physician further testified that head-butts are particularly dangerous because they can cause a circumstance where the brain begins to bleed into a confined space, building up intracranial pressure. The physician testified that, when a head-butt is applied with adequate force, the result can be a life threatening injury. Moreover, when the state inquired as to whether

"a head-butt [was] the type of mechanism that is likely to cause great bodily harm," the physician responded, "Absolutely."

Barrera emphasizes that the state's expert was not asked whether the means alleged in this case--specifically, a head-butt "with force great enough to necessitate stitches above the victim's left eye,"--was likely to cause great bodily harm. Barrera also relies upon evidence presented by the state which indicated that, if Barrera were ever in a fight, he planned to execute a head-butt and would be careful so as not to break the other individual's jaw. Barrera contends these are flaws in the state's case that render the evidence insufficient for aggravated assault.

However, Barrera's argument misconstrues the required showing for an aggravated assault. In discerning whether the evidence is sufficient on this element, we do not look to the injuries or harm *actually* inflicted, but to whether the jury could reasonably find that the means or force used was *likely* to cause great bodily harm. *State v. Horejs*, 143 Idaho 260, 263, 141 P.3d 1129, 1132 (Ct. App. 2006). The emergency room physician called by the state specifically testified that a head-butt was a type of means likely to produce great bodily harm. This is substantial evidence upon which a reasonable trier of fact could have found that the state sustained its burden.

## B.    Jury Instructions

Barrera next argues that the district court erred in responding to a question from the jury. Barrera contends the district court's response improperly instructed the jury as to the requisite mental state for aggravated assault. The state contends that Barrera acquiesced in the district court's response and, therefore, this claim is precluded under the invited error doctrine.

During deliberations, the jury asked, regarding Instruction No. 11, "To prove aggravated assault, does the state need to show that the defendant intended to commit an assault likely to produce great bodily harm? In other words, does the defendant's intent apply to the phrase, 'likely to produce great bodily harm'?" The district court initially indicated it would respond as follows: "The criminal intent which is required is the general intent to willfully commit an act, the direct, natural and probable consequences of which if successfully completed would be the injury to another. The intent to cause any particular injury is not necessary."

Barrera objected, contending the response should use the phrase "particular violent injury" as opposed to "any particular injury." After lengthy discussion between the district court, the state and Barrera, the district court acquiesced in Barrera's request and asked, "What did you want?" Barrera responded, "The state still must prove and make the reference to violent injury

4

or make the reference to great bodily harm." Next, the district court proposed that it make the following addition: "It is for you to decide if there was an assault and if it was done by any means or force likely to produce great bodily harm." The district court asked Barrera if this was acceptable, and Barrera requested the district court modify "any means" to read "a means." The district court complied with this request and submitted the response to the jury.

The doctrine of invited error applies to estop a party from asserting an error when his or her own conduct induces the commission of the error. *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct. App. 1993). One may not complain of errors one has consented to or acquiesced in. *State v. Caudill*, 109 Idaho 222, 226, 706 P.2d 456, 460 (1985); *State v. Lee*, 131 Idaho 600, 605, 961 P.2d 1203, 1208 (Ct. App. 1998). In short, invited errors are not reversible. *State v. Gittins*, 129 Idaho 54, 58, 921 P.2d 754, 758 (Ct. App. 1996). This doctrine applies to sentencing decisions as well as rulings made during trial. *State v. Griffith*, 110 Idaho 613, 614, 716 P.2d 1385, 1386 (Ct. App. 1986).

While Barrera initially objected to the district court's response, the district court complied with Barrera's request and altered its response to Barrera's satisfaction. Barrera cannot now complain the response he acquiesced to constituted error. As to the argument that the instruction relieved the state of its burden on the required mental state, Barrera did not raise this objection below to the district court's response. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Barrera does not assert fundamental error. Therefore, the doctrine of invited error, as well as the failure to preserve the issue, precludes Barrera from furthering this argument on appeal.

## C.     Text Messages

Barrera next argues the district court erred by admitting two text messages over Barrera's objection. Barrera contends these text messages are inadmissible character evidence. Barrera also contends that, even if these text messages are not considered character evidence, any relevance was outweighed by the risk of unfair prejudice. The state argues the district court correctly concluded the text messages were admissible for purposes other than character and were not unfairly prejudicial.

At trial, the state endeavored to introduce a number of text messages sent from Barrera to the victim's wife near the time of the assault. Those text messages were designated as follows:

Exhibit 6, sent 1/16/11 at 12:22 a.m.: "I saw your pussy ass ex. He tried to get brave but I'm here with two big dudes"

Exhibit 7, sent 1/16/11 at 12:25 a.m.: "So am i. He's little. We're huge. Don't get brave little guy[.]"

Exhibit 8, sent 1/16/11 at 12:47 a.m.: "You and him are gay and small"

Exhibit 9, sent 1/16/11 at 12:50 a.m.: "Bliss"

Exhibit 10, sent 1/16/11 at 1:22 a.m.: "You blow"

Exhibit 11, sent 1/16/11 at 1:37 a.m.: "Want to fuck?"

Exhibits 6 through 8 were admitted without objection. Exhibit 9 was admitted over Barrera's relevance objection. The district court initially excluded Exhibits 10 and 11, finding them prejudicial and lacking of relevance. However, the district court later amended its ruling after Barrera testified, concluding the exhibits went to Barrera's credibility, state of mind, and corroborated the relationship between the victim's wife and Barrera.

It is unnecessary to decide in this case whether the admitted text messages were relevant and admissible character evidence. For the purposes of this opinion, we will assume that the text messages were erroneously admitted. Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). Thus, we next examine whether the alleged error complained of in the present case was harmless. *See State v. Poland*, 116 Idaho 34, 37, 773 P.2d 651, 654 (Ct. App. 1989). An error is harmless if the appellate court is able to declare, beyond a reasonable doubt, that the error did not contribute to the verdict. *State v. Perry*, 150 Idaho 209, 221-22, 245 P.3d 961, 973-74 (2010).

In this case, the evidence of Barrera's guilt was substantial. The victim testified that Barrera, enraged at the time, initially lunged at him and missed. The victim further stated Barrera then grabbed him by the neck and intentionally head-butted him. The victim was clear that the head-butt was not an accident. The victim's friend testified that, while he did not see the actual head-butt, he observed the victim bleeding and heard the victim state, "'He head-butted me.'" Barrera's text messages that night demonstrate he had considered fighting the victim when stating, "He's little. We're huge. Don't get brave little guy" and "He tried to get brave but I'm here with two big dudes." Perhaps most condemning, an ex-girlfriend of Barrera testified that Barrera previously told her that if he were ever in a fight he would head-butt his opponent

6

because "they would never see it coming, and you can't defend against it." Barrera also told this ex-girlfriend that "he would just have to be careful that he didn't break the guy's jaw or anything because he didn't want it to be a felony. He was fine with a misdemeanor, but he didn't want a felony." The means utilized in this case were exactly what Barrera previously indicated he would use if ever in a fight. This testimony undercut Barrera's defense, claiming the meeting of the heads was unintentional. Having reviewed the record, we conclude that any alleged error in the admission of the text messages was harmless beyond a reasonable doubt in view of the other substantial and competent evidence of Barrera's guilt presented at trial.

**D.     Expert Testimony**

Barrera argues that the district court erred by concluding that testimony of one of his proffered experts was not relevant and violated his Sixth Amendment right to call witnesses on his behalf. The state argues that the district court properly exercised its discretion in excluding the expert.

When a trial court's decision to admit or exclude expert testimony is challenged on appeal, this Court reviews the decision for an abuse of discretion. *State v. Merwin*, 131 Idaho 642, 645-46, 962 P.2d 1026, 1029-30 (1998); *State v. Winn*, 121 Idaho 850, 855, 828 P.2d 879, 884 (1992); *State v. Konechny*, 134 Idaho 410, 414, 3 P.3d 535, 539 (Ct. App. 2000). The admission of expert opinion testimony is governed by Idaho Rule of Evidence 702, which states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Under this rule, the proponent of the testimony must lay foundational evidence showing that the individual is qualified as an expert on the topic about which he or she will testify. *Winn*, 121 Idaho at 855-56, 828 P.2d at 884-85; *State v. Parkinson*, 128 Idaho 29, 33-34, 909 P.2d 647, 651-52 (Ct. App. 1996).

The proposed testimony at issue was that of a martial arts expert. Barrera contended that this expert would testify to what a head-butt is, how a head-butt is administered, and how a head-butt can be administered to produce great bodily harm. The district court granted the state's motion to exclude this expert, concluding as follows:

> I think this is within the court's discretion, and then the question is whether or not [this witness] would assist the trier of fact or only confuse them, and I think his testimony would be--would confuse the jury. [This witness's] expertise is in martial arts. This is not what we had here. We have basically two

7

lay people having a heated argument and one of them gets hurt. The state's alleging that it was a head-butt, but it was not. They're not alleging in the sense of it was a martial arts type maneuver or what, and that it's something--and there is no evidence that I have that [Barrera] understood at the time of this incident that--how to head-butt in martial arts.

Barrera's offer of proof did not demonstrate that Barrera knew how to administer a martial arts style head-butt. Further, Barrera did not demonstrate that the proposed testimony would cover all head-butts that are capable of producing great bodily harm--it appears the witness simply would have explained one advanced method to cause substantial harm with a head-butt. This proposed testimony did not indicate that all other methods of head-butting are not able to produce great bodily harm. There was no showing that this expert would have been qualified to render such an opinion in any event. Therefore, the district court correctly concluded that this witness would not aid the trier of fact and did not abuse its discretion in granting the state's motion to exclude the witness.

Barrera also argues that the exclusion of this witness violates his constitutional right to present a complete defense, which is rooted in the Compulsory Process or Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment and includes the right to offer testimony of witnesses to compel their attendance. *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *Chambers v. Mississippi*, 410 U.S. 284, 299 (1973); *Washington v. Texas*, 388 U.S. 14, 18-19 (1967); *State v. Meister*, 148 Idaho 236, 239, 220 P.3d 1055, 1058 (2009); *State v. Dalrymple*, 144 Idaho 628, 635, 167 P.3d 765, 772 (2007). Barrera's constitutional right to present a defense was not infringed, however, for this constitutional guarantee does not afford a criminal defendant a right to present irrelevant evidence.[3] *See State v. Self*, 139 Idaho 718, 722, 85 P.3d 1117, 1121 (Ct. App. 2003). Accordingly, the exclusion of this witness was not error.

## E.    Cumulative Error

Barrera also contends that the cumulative error doctrine applies here, necessitating a reversal of his conviction. Under the doctrine of cumulative error, a series of errors, harmless in

---

[3]      We also note that Barrera was able to call another expert, a doctor of osteopathic medicine, who provided testimony to rebut that from the state's expert. This expert called by Barrera indicated that "if I were standing right in front of you and would head-butt you, you might break your nose, you might get a laceration, you could get a tooth knocked out, okay, but you would not have a serious, serious injury."

and of themselves, may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). However, a necessary predicate to the application of the doctrine is a finding of more than one error. *Adamcik*, 152 Idaho at 483, 272 P.3d at 455. Barrera has failed to demonstrate at least two errors, a necessary predicate to the application of the cumulative error doctrine.

**F.      Prosecutorial Misconduct**

Barrera also argues that the prosecutor committed misconduct by stating that part of a defense attorney's job is to confuse the jury. The state argues that Barrera has failed to demonstrate these unobjected to comments amount to error, much less fundamental error.

During closing arguments, Barrera described the victim's version of events that evening as "disoriented" and reiterated that word (or some variation thereof) over thirty times during his closing argument. The state opened its rebuttal argument by stating, "After defense counsel's remarks to you, my concern is that you are going to be disoriented. That you are going to be confused, because that's part of his job, about what you're supposed to do here." Barrera did not object to this comment. However, on appeal, Barrera contends that this insulted the function of defense counsel and was especially prejudicial given that Barrera is also a criminal defense attorney.

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id*.; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Appeals to emotion, passion, or prejudice of the jury through the use of inflammatory tactics are impermissible. *Phillips*, 144 Idaho at 87, 156 P.3d at 588. *See also State v. Raudebaugh*, 124 Idaho 758, 769, 864 P.2d 596, 607 (1993); *State v. Pecor*, 132 Idaho 359, 367, 972 P.2d 737, 745 (Ct. App. 1998). The state's closing argument should not include disparaging comments about opposing counsel. *Phillips*, 144 Idaho at 86, 156 P.3d at 587. *See also Sheahan*, 139 Idaho at 280, 77 P.3d at 969; *State v. Brown*, 131 Idaho 61, 69, 951 P.2d 1288, 1296 (Ct. App. 1998); *State v. Baruth*, 107 Idaho 651, 657, 691 P.2d 1266, 1272 (Ct. App. 1984). Similarly, the state's closing argument should not include disparaging comments

concerning the role of defense attorneys in general. *State v. Timmons*, 145 Idaho 279, 290, 178 P.3d 644, 655 (Ct. App. 2008).

Barrera made no contemporaneous objection to the prosecutor's comment at trial. In *Perry*, 150 Idaho 209, 245 P.3d 96, the Idaho Supreme Court clarified the fundamental error doctrine as it applies to allegations of prosecutorial misconduct. If the alleged misconduct was not followed by a contemporaneous objection, an appellate court should reverse when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

There is no need to determine if the comment at issue was disparaging as we conclude the error complained of was not fundamental because the third prong, requiring that the alleged error affected the outcome of the trial proceedings, was not met. The state presented overwhelming evidence of Barrera's guilt. Thus, Barrera's claim of prosecutorial misconduct fails under the third prong of *Perry*.

## III.

## CONCLUSION

The state presented substantial evidence upon which a reasonable trier of fact could have found that the state sustained its burden of proving the essential elements of an aggravated assault beyond a reasonable doubt. Barrera acquiesced in the response to a question from the jury and, therefore, his claim that the response constituted error is precluded under the invited error doctrine. Any alternative argument regarding the required mental state was not preserved for appeal. The text messages admitted over objection were harmless beyond a reasonable doubt. The district court did not abuse its discretion in excluding Barrera's expert in martial arts style head-butting. Cumulative error doctrine does not apply. The prosecutor's comment during closing argument, even assuming misconduct, did not affect the outcome of the proceedings. Accordingly, Barrera's judgment of conviction for aggravated assault is affirmed.

Judge LANSING and Judge GRATTON, **CONCUR.**