## IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42421-2014

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **Boise, December 2014 Term** |
| Plaintiff-Respondent, | ) | |
| | ) | **2015 Opinion No. 8a** |
| v. | ) | |
| | ) | **Filed: January 23, 2015** |
| JOSEPH ANTHONY THOMAS, JR., | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| Defendant-Appellant. | ) | |
| | ) | **AMENDED OPINION** |
| | ) | **THE COURT'S PRIOR** |
| | ) | **OPINION DATED JANUARY** |
| | ) | **23, 2015 IS HEREBY** |
| | ) | **AMENDED.** |
| | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, in and for Nez Perce County. Hon. Michael J. Griffin, District Judge.

The judgment of the district court is vacated.

Sara B. Thomas, State Appellate Public Defender, Boise, argued for appellant.

Kenneth K. Jorgensen, Deputy Attorney General, Boise, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of Nez Perce County from a conviction for murder in the first degree. Because the district court erroneously excluded evidence that could have corroborated the defendant's version of what had occurred and the State has not shown that such error was harmless, we vacate the jury verdict and the judgment and remand this case for further proceedings.

## I.
## Factual Background.

A jury found Joseph Anthony Thomas, Jr., (Defendant) guilty of the crime of murder in the first degree for the strangulation death of his ex-wife, Beth Irby Thomas (Decedent), on April 30, 2011. A friend of Defendant testified that at about 12:30 a.m. the following day, Defendant came to the friend's home and stated that he had strangled Decedent. After Defendant left, the friend called 911. The first police officer to arrive at Decedent's home found her with a leather belt cinched tightly around her neck. The belt was Defendant's, and he was standing outside her house when the police arrived.

Prior to trial, the State became aware that Defendant may offer evidence that Decedent engaged in erotic asphyxiation. It filed a motion to exclude evidence regarding Decedent's prior sexual acts or behavior, contending that it was not relevant. Defendant responded with partial transcripts of two interviews conducted by a detective.

One interview was of a close female friend of Decedent. The friend stated that Decedent "liked to be choked out," and she then added: "I thought I'd throw that out there right off the bat. Yeah, she did. That, yeah." The detective responded that they were anticipating that as a possible defense, and the friend responded: "I know it would be. Actually that's the first thing that came to my mind." The friend said that she did not think that Defendant and Decedent did it very often and "I know it was only hands." When asked about it being only with hands, the friend explained: "Yeah. 'Cause I kind of asked her about that—like what do you guys do and she was just kind of like, 'Oh, just hands.' But then again, when she told me she liked to be choked out, I probably gave her the look. You know." When asked if Decedent described it at all, the friend answered: "No. I think because I was kind of appalled she kind of nixed me on the conversation type thing. But she might have talked some more to [the other friend] about it. Because [the other friend] was there when we talked about that part and she's a little more open than I am."

The other interview was of Decedent's boyfriend. He stated that early in their relationship, while having sex Decedent brought his hand up to her neck, squeezed her hand around his hand, and asked if he would squeeze her neck a little bit. He tried it for about fifteen to twenty seconds, but quit because it scared him and he did not like it. Later in their relationship, they were having sex and she asked him if he would choke her. He refused.

The district court granted the motion in limine on the ground that there was no evidence that Decedent was engaged in sexual activity or autoerotic asphyxia at the time of her death. The

2

court ordered that Defendant "may not bring up autoerotic asphyxia during any portion of this case," and it also denied Defendant's request for funds to retain an expert regarding autoerotic asphyxia.

Defendant filed a motion asking the district court to reconsider its ruling. Defendant contended that the court's ruling was broader than the State's motion and that Defendant had the right to present his full defense. Defendant supported the motion with his affidavit in which he stated that Decedent had previously asked him to choke her during sex, that on one occasion he discovered her masturbating with one hand while using her other hand to pull a necktie that was around her neck, and that he and she had engaged in sexual activities shortly before her death and she had put the belt around her neck. The court again ruled that evidence of Decedent's prior sexual activities is irrelevant, but it would reconsider its ruling if "evidence is admitted at trial which would show that it is more probable than not that [Decedent] was engaged in some form of autoerotic asphyxia immediately prior to her death." On the same date, it entered an order authorizing Defendant to retain, at county expense, an expert to advise Defendant about autoerotic asphyxia and to be prepared to testify at the trial on that subject.

Defendant filed another motion for reconsideration, describing the evidence he intended to present regarding Decedent's prior sexual activities. It would include Defendant's testimony summarized above; the testimony of the two persons interviewed by the detective; and the testimony of [the other friend], mentioned above, who would testify that while talking to Decedent about her sexual relationship with Defendant, Decedent mentioned being choked, and [the other friend] told her she did not think that was a smart idea. The district court reaffirmed its prior order with two exceptions mentioned in Defendant's affidavit. The order would not exclude evidence about Defendant's "sexual act with the victim which included choking with a belt immediately prior to the victim's death," and it would not exclude evidence regarding the tie "[i]f the evidence admitted at trial supports the theory that the defendant was choking herself immediately prior to her death while engaged in a sexual act."

During the trial, Defendant testified that he went to Decedent's house at about 8:30 p.m. on April 30, 2011, and played with their sons. After the sons were in bed, he and Decedent eventually drank some rum. They then started kissing and hugging and Decedent grabbed his belt. They ultimately engaged in sexual intercourse, and Decedent had put the belt around her neck. He stated that about twenty times previously she had put the belt around her neck and

3

tightened it when they were having sex and had also used neckties. He stated that when he got up to dress, she continued to masturbate with the belt around her neck, which was something she had done before. He then left and sat in his vehicle for a while attempting to sleep. After a little while, he went back into Decedent's house and found her dead.

Defendant also called a psychologist to testify about autoerotic asphyxiation. He stated that autoerotic asphyxia was a potentially lethal practice, and that deaths associated with it are often labeled as suicide or homicide rather than accidental. According to the psychologist, the goal is to deplete oxygen from the brain in order to heighten sexual arousal.

The State called as a witness the lead detective on the case. He testified that numerous interviews were done and that they "had to follow up on interviews about [Decedent] in reference to her activities and potential sexual practices that were known by friends through this investigation." He did not testify about the interviews with Decedent's female friend and boyfriend in which they stated that Decedent enjoyed being "choked out" during sex.

During the jury's deliberations, it sent a note to the court asking, "Did anyone other than Joe [Thomas] lay foundation that Beth [Irby Thomas] was, in fact, into autoerotic asphyxiation?" The district court responded with a note stating, "You are advised that you must rely on your own memories as to what each witness had to say." About one and one-half hours later, the jury returned with a verdict finding Defendant guilty of murder in the first degree. The court later sentenced him to life in the custody of the Idaho State Board of Correction with twenty-five years fixed and the remainder indeterminate. Defendant then timely appealed.

The appeal was first heard by the Idaho Court of Appeals. In a divided opinion, it held that the district court erred in excluding the proffered evidence from Decedent's friends and boyfriend that she enjoyed erotic asphyxiation, but the error was harmless. This Court then granted Defendant's petition for review. In cases that come before this Court on a petition for review of a decision of the Court of Appeals, we directly review the decision of the lower court as if the appeal initially came directly to this Court. *State v. Suriner*, 154 Idaho 81, 83, 294 P.3d 1093, 1095 (2013).

## II.
### Did the District Court Err in Excluding Evidence from Others that Decedent Enjoyed Erotic Asphyxiation?

4

A defendant in a criminal case has a constitutional right to present a defense, including the right to present the defendant's version of the facts. *State v. Meister*, 148 Idaho 236, 239, 220 P.3d 1055, 1058 (2009). " 'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. "Whether evidence is relevant is an issue of law, which we review de novo." *State v. Russo*, 157 Idaho 299, 308, 336 P.3d 232, 241 (2014).

In its final order on the issue, the district court held that evidence of Decedent's prior sexual acts involving autoerotic asphyxia were inadmissible if they did not include the use of a rope, belt, tie, or other similar device. The excluded evidence would have corroborated Defendant's testimony that Decedent enjoyed erotic asphyxiation and was relevant to the issue of whether he intentionally killed her. The fact that Decedent had only informed the excluded witnesses about desiring to be asphyxiated by a sexual partner who used his hands does not make the evidence irrelevant. The court had no basis for concluding that a person who enjoys erotic asphyxiation would not attempt autoerotic asphyxiation or that a person who wanted a sexual partner to use hands for erotic asphyxiation would not also use a belt, rope, tie, or other object. Therefore, the district court committed constitutional error in excluding evidence relevant to Defendant's defense.

The State argues that even if the evidence was relevant, it was properly excluded under Rule 403 of the Idaho Rules of Evidence[1] because "[g]iven the controversial nature of atypical sex acts, testimony that [Decedent] enjoyed being choked during sex would confuse the issue before the jury." According to the State, evidence of one type of "aberrant or deviant" sex act would improperly suggest that Decedent would have engaged in another type of aberrant or deviant sex act, "such as self-asphyxiation while masturbating." The district court did not rule that the evidence was relevant but excludable under Rule 403. It ruled that the evidence was not relevant. Nevertheless, it is the province of the jury to determine the credibility of the witnesses, the weight of the evidence, and the reasonable inferences to be drawn from the evidence. *State v.*

---

[1] Rule 403 of the Idaho Rules of Evidence states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

5

*Oliver*, 144 Idaho 722, 724, 170 P.3d 387, 389 (2007). The mere fact that this proffered evidence may have led one or more jurors to believe the Defendant's testimony does not make it excludable under Rule 403.

The State has the burden of demonstrating beyond a reasonable doubt that such error was harmless. *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010). The State argues that the evidence presented during the trial does not reasonably support Defendant's version of what occurred and that the evidence of guilt was overwhelming. In some instances, a constitutional error can be determined to be harmless because of the overwhelming evidence of guilt. *State v. Skunkcap*, 157 Idaho 221, 235, 335 P.3d 561, 575 (2014). However, in this case we must also consider the question asked by the jury.

In arguing that the error was harmless, the State does not mention the jury's question about whether anyone other than Defendant testified that Decedent "was, in fact, into autoerotic asphyxiation?" In determining whether the constitutional error was harmless beyond a reasonable doubt, the issue "is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993).

The jury's question indicates that at least one juror was concerned whether there was any evidence to corroborate Defendant's testimony. The district court answered the question by instructing the members of the jury to rely on their own memories as to what the witnesses testified. However, the witness testimony that may have corroborated Defendant's testimony had been excluded. In addition, the State had the lead detective testify that there were interviews of Decedent's friends regarding her "activities and potential sexual practices," but he did not testify that two of her friends who were interviewed confirmed that Decedent enjoyed erotic asphyxiation. The jury could have assumed that none of her friends that were interviewed would support that contention. The State has failed to demonstrate beyond a reasonable doubt that the constitutional error in excluding the proffered evidence did not affect the jury's verdict in this case. We must therefore vacate the jury's verdict and judgment and remand this case for further proceedings.

### III.
### Conclusion.

6

We vacate the jury verdict and judgment and remand this case for further proceedings.

Chief Justice BURDICK, Justice J. JONES, and Justices Pro Tem SCHROEDER AND KIDWELL **CONCUR.**