**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43438**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Opinion No. 80** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed:  December 8, 2016** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **ANTHONY WAYNE CONNER,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Richard D. Greenwood, District Judge.

Order denying motion to admit certain statements, <u>affirmed</u>; judgment of conviction for second degree murder and destruction, alteration, or concealment of evidence, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett LLP; Dennis Benjamin, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Judge

Anthony Wayne Conner appeals from his judgment of conviction for second degree murder, Idaho Code §§ 18-4001, 18-4003(g), and destruction, alteration, or concealment of evidence, I.C. § 18-2603.  Conner asserts the district court erred by excluding statements the decedent made in the week prior to his death.  We affirm.

**I.**

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

One evening, at approximately 8:50 p.m., Conner called 911 and reported having found his eighty-seven-year-old father, Otis Conner ("Otis"), dead in the garage of the home they shared.  Conner indicated to the police that he had come home to find that Otis had fallen off a ten-foot ladder while trying to retrieve items from an attic storage area and hit his head on the concrete floor or steps.  After an initial investigation, including discussions with Otis's sons,

1

Doug Conner and Randy Conner, who expressed concern that Otis's death may not have been caused by a fall, the police obtained and executed a search warrant for Conner's residence.

Detectives found stains on the carpet between the dining room and the living room. When detectives moved an oddly-positioned chair and rug, the detectives observed two more stains near a heat register. Subsequent DNA tests showed that Otis's blood was found on a rug in the laundry room, on the east living room wall, in the carpeting under the heat register, in a carpet cleaning machine, on the underside of a chair in the living room, on the living room ceiling, on the garage floor, on one of the legs of the ladder, and on the claw of a hammer. Forensic investigators also tested for the presence of blood which was detected on the windowsill and the baseboard area near the carpet stains as well as on the kitchen floor, around the kitchen sink, and on the laundry room floor. The tests indicated "linear impressions" which the investigators reported as "drag marks." Based on these findings, the State theorized that Conner hit Otis on the head with a hammer in the living room, dragged his body to the garage, and staged an accident using the ladder. Based on discussions with Doug Conner and Randy Conner and financial records obtained in the course of the investigation, the State posited that Conner's motive was financial gain. Conner was charged with first degree murder, grand theft, forgery, and destruction, alteration, or concealment of evidence.

At trial, Conner testified that in the week prior to Otis's death, Conner returned home to find Otis cleaning the living room rug with a large gauze bandage on his head. Otis told Conner he had fallen. Conner stated he did not see any blood stains because Otis had moved an area rug over them. Conner testified that the next day he again returned home to find Otis using a carpet cleaning machine over the rug. There were two large blood spots on the rug and the heat register was also bloody. Conner stated that the gauze bandage from the day before had been replaced with a larger bandage. Conner further testified that Otis attempted to lift the heat register but could not get his fingers underneath its edge, so Conner retrieved a hammer from the garage, pried up the heat register with the claws of the hammer, and rinsed off the register in the kitchen sink.

Prior to trial, Conner moved to admit statements allegedly made by Otis to Kelly Riggs, a family friend, about Otis falling, injuring his head, and trying to remove the blood stains. Conner argued that Otis's prior statements were admissible because they fell under the hearsay exceptions contained within the Idaho Rules of Evidence. The district court reserved ruling on

2

Conner's motion until trial.  At trial, Conner argued that under I.R.E. 803(3) and (24), the statements allegedly made by Otis to Riggs should be admitted.  In an offer of proof regarding his proposed testimony, Riggs told the district court that when he visited Otis a few days before he passed away, Otis had a bandage on his forehead.  Riggs stated that Otis told him he had fallen while getting up out of his chair, hit his head, laid on the floor for a while, bled on the carpet, tried unsuccessfully to clean it up, and moved a chair to cover the blood spot.  The district court ruled that Otis's hearsay statements were not admissible under Rule 803(3) or (24).[1]  Riggs was allowed to testify only as to his visit with Otis and his observation that Otis had a bandage on his forehead.  Riggs' wife also testified that she had seen a bandage on Otis's head during the same visit, albeit a smaller-type bandage than Riggs described.

The jury found Conner guilty of second degree murder and destruction, alteration, or concealment of evidence, but was unable to reach a verdict on the other charges.  At sentencing, the district court, based on a motion by the State, dismissed the grand theft and forgery charges.  The district court entered judgment against Conner and sentenced him to a unified term of thirty years with eighteen years determinate on the second degree murder conviction, and imposed a concurrent sentence of five years determinate on the destruction, alteration, or concealment of evidence conviction.  Conner timely appeals.

## II.

## ANALYSIS

Conner challenges the district court's ruling which excluded the statements Otis made to Riggs in the week prior to his death.  Alternatively, Conner asserts that the district court committed fundamental error by excluding the statements.

### A.      Exclusion of Hearsay Statements

Conner argues that the district court erred in denying Conner's motion to admit certain statements made by Otis.  Conner sought to admit Riggs' testimony relating to statements made by Otis in the week prior to his death, specifically:

> We talked about several things.  When my family come in, I noticed a bandage on his forehead high on the right side by the hairline, a fairly large bandage.  I asked him what happened to his head.  He said he got up out of the chair, lost his balance, fell down, hit his head, laid there for a while, didn't know how long.  He

---

[1]      On appeal, Conner does not argue that the district court erred in excluding the statements under Idaho Rule of Evidence 803(3).

didn't know how long he was on the floor. Got up, had bled on the carpet. Fixed his head and then tried to clean the blood out of the carpet. Couldn't. And so he slid the chair over it, over the blood spot.

On appeal, Conner argues that Riggs' testimony was admissible under what is commonly known at the "catchall" hearsay exception, I.R.E. 803(24), which states:

> A statement not specifically covered by any of the foregoing exceptions but having the equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purpose of these rules and the interest of justice will be best served by admission of the statement into evidence.

The decision whether to admit evidence at trial is generally within the province of the trial court. A trial court's determination that evidence is supported by a proper foundation is reviewed for an abuse of discretion. *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999). Therefore, a trial court's determination as to the admission of evidence at trial will only be reversed where there has been an abuse of that discretion. *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

In ruling that the testimony was inadmissible under Rule 803(24), the district court stated:

> I do not find that it is admissible under 803(24) as the--what's come to be called the catchall exception. That originated from an old case having to do with the use of old newspapers, but it is sparingly, if at all, applied, and in part because there needs to be some guarantee--other circumstantial--well, as the State puts it, evidence of trustworthy.
>
> And we don't have anything here that shows us anymore trustworthiness than any statement made by a witness. The problem is, as Mr. Bailey points out, the actual witness testifying isn't with us. And so there is nothing particularly about the circumstances of that conversation that would make its recitation through this witness particularly trustworthy.
>
> So I will not allow that conversation. You're certainly entitled to appeal and disagree.

Our first inquiry is whether the statements were hearsay. Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in

evidence to prove the truth of the matter asserted. I.R.E. 801(c); *State v. Gomez*, 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct. App. 1994). Hearsay is inadmissible unless otherwise provided by an exception in the Idaho Rules of Evidence or other rules of the Idaho Supreme Court. I.R.E. 802. The district court examined the statements allegedly made by Otis and determined that they were being offered to prove the truth of the matters asserted therein and were, therefore, hearsay. The next inquiry is whether they were admissible under an exception to the hearsay rule.

Conner argues that the district court abused its discretion because the exclusion of the evidence was based upon the court's conclusion that the evidence was not "particularly trustworthy," which Conner asserts is a higher standard than "the equivalent circumstantial guarantees of trustworthiness" language found in Rule 803. Rather, Conner avers, evidence admitted under the catchall exception need only "demonstrate a trustworthiness within the spirit of the specifically stated exceptions." The district court did not abuse its discretion. It is apparent that the trial court understood the issue to be a discretionary one and correctly recognized and applied the guiding principles of Rule 803(24). Although the district court did not use the specific language from the rule, it is apparent from its ruling that the district court was looking for "the equivalent circumstantial guarantees of trustworthiness." The district court did not misunderstand the standard of the rule and in using the word "particularly" did not impose a higher threshold than that generally imposed upon those exceptions specifically stated in Rule 803. To that end, we hold that the first criteria of Rule 803(24), that the statement carries circumstantial guarantees of trustworthiness equivalent to those of the other Rule 803 hearsay exceptions, is not satisfied here. The offer of proof did not describe anything in the circumstances under which Otis made the statements that would give an aura of truthfulness or reliability to the statements. It is simply a conversation that bears no circumstantial guarantees of trustworthiness. That is not to say that the witness was not truthful, but only that the statements are not inherently or circumstantially trustworthy. Accordingly, we find no error in the exclusion of Riggs' hearsay testimony.

**B.     Fundamental Error**

Alternatively, Conner argues that the district court committed fundamental error by violating Conner's constitutional right to present evidence when it excluded Riggs' testimony relating to the statements Otis made to him. Conner acknowledges he did not raise this claim

before the district court. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). However, Idaho appellate courts may consider a claim of error to which no objection was made in the trial court if the issue presented rises to the level of fundamental error. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971); *State v. Hansen*, 154 Idaho 882, 886-87, 303 P.3d 241, 245-46 (Ct. App. 2013). A fundamental error is one that: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affects the outcome of the trial proceedings. *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010).

The right to present evidence is grounded in the Sixth Amendment's Compulsory Process Clause. *Taylor v. Illinois*, 484 U.S. 400, 409-10 (1988); *State v. Harris*, 132 Idaho 843, 846, 979 P.2d 1201, 1204 (1999). Conner contends that excluding Otis's statements violated this right. We disagree. The substance of the claimed error is that the jury should have heard testimony that supported the defense's theory as to why there was a large amount of Otis's blood found inside the house, even though Otis's body was found in the garage, despite the fact that the testimony was hearsay and deemed inadmissible under the Idaho Rules of Evidence. "Where the asserted error relates not to infringement upon a constitutional right, but to violation of a rule or statute, the fundamental error doctrine is not implicated." *State v. Garcia*, 156 Idaho 352, 356, 326 P.3d 354, 358 (Ct. App. 2014); *see State v. Jackson*, 151 Idaho 376, 256 P.3d 784 (Ct. App. 2011).

> To hold that the presentation of evidence and associated argument in violation of an evidentiary rule satisfies the constitutional violation element of *Perry* because all evidentiary error implicates due process would, in our view, virtually eviscerate the first prong of the *Perry* standard and contravene the limits that *Perry* places on fundamental error review.

*Garcia*, 156 Idaho at 356-57, 326 P.3d at 358-59 (quoting *Jackson*, 151 Idaho at 379-80, 256 P.3d at 787-88). *See also State v. Norton*, 151 Idaho 176, 184-87, 254 P.3d 77, 85-88 (Ct. App. 2011).

In support of his argument that the Sixth Amendment right to present evidence can supersede state rules of evidence, Conner primarily relies upon *State v. Thomas*, 157 Idaho 916, 342 P.3d 628 (2015), *State v. Perry*, 139 Idaho 520, 81 P.3d 1230 (2003), and *State v. Peite*, 122 Idaho 809, 839 P.2d 1223 (Ct. App. 1992). However, in each of these cases, the Idaho appellate

6

courts analyzed whether evidence was admissible under the Idaho Rules of Evidence in addition to whether the exclusion of evidence was a violation of constitutional rights. Further, Conner avers that the language in *State v. Meister*, 148 Idaho 236, 220 P.3d 1055 (2009), acknowledges there will be rare cases where the evidence is not admissible under the rules, but nevertheless must be admitted in the interests of due process. In *Meister*, the Idaho Supreme Court stated that "this Court adopts an approach which holds that the Rules of Evidence generally govern the admission of *all evidence* in the courts of this State." *Id*. at 240, 220 P.3d at 1059. Conner points to the phrase "generally govern" to demonstrate his contention. However, *Meister* does not suggest this conclusion in its context or outcome and does not stand as authority for such a proposition.[2] While it may be true that there are exceptional cases where evidence otherwise inadmissible under the Rules of Evidence would be admitted in the interests of due process, this is not such a case. We have affirmed that Otis's statements made to Riggs were properly excluded from evidence based on the lack of guarantees of trustworthiness. There is no right to admit untrustworthy evidence simply by claiming a constitutional violation. Thus, the exclusion of evidence in this case is not reviewable as fundamental error.

## III.

## CONCLUSION

Conner has failed to demonstrate that the district court abused its discretion in denying his motion to admit statements made by Otis in the week prior to his death. Further, Conner has not shown it was fundamental error for the district court to exclude these statements. We affirm

---

2   In *Meister*, the defendant was charged with first degree murder and conspiracy to commit murder. *State v. Meister*, 148 Idaho 236, 238, 220 P.3d 1055, 1057 (2009). At trial, the defendant sought to introduce evidence that another individual was responsible for the murder. *Id*. The district court refused to allow the defendant to introduce any evidence which showed the other individual was responsible for the murders, including a confession by that individual. *Id*. at 238-39, 220 P.3d at 1057-58. On appeal, Meister claimed that the district court's refusal to allow him to admit evidence of the confession deprived him of his constitutional right to provide a full and complete defense. *Id*. at 239-40, 220 P.3d at 1058-59. The Idaho Supreme Court held that the district court should have analyzed whether the confession was admissible under the Idaho Rules of Evidence. *Id*. at 240-41, 220 P.3d at 1059-60. The Court explained that the Idaho Rules of Evidence "embody the balancing test which safeguards a defendant's constitutional right to present a defense along with protection of the state's interest in the integrity of the criminal trial process." *Id*. at 240, 220 P.3d at 1060. "Meister should be afforded the opportunity to present his complete and full defense, which includes the presentation of all relevant evidence in the context of trial *pursuant to any limitations of the Idaho Rules of Evidence*." *Id*. at 241, 220 P.3d at 1060 (emphasis added).

the district court's denial of Conner's motion to admit certain statements. Accordingly, Conner's judgment and conviction for second degree murder and destruction, alteration, or concealment of evidence is affirmed.

Chief Judge MELANSON and Judge HUSKEY **CONCUR**.