IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 46924

| | | |
|---|---|---|
| ANTHONY WAYNE CONNER, | ) | |
| | ) | Filed:  May 8, 2020 |
| Petitioner-Appellant, | ) | |
| | ) | Karel A. Lehrman, Clerk |
| v. | ) | |
| | ) | THIS IS AN UNPUBLISHED |
| STATE OF IDAHO, | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Patrick Miller, District Judge.

Judgment summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Silvey Law Office, Ltd; Greg S. Silvey, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jeff D. Nye, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Anthony Wayne Conner appeals from the district court's judgment summarily dismissing his petition for post-conviction relief.  Conner argues the district court erred when it found he failed to sufficiently allege prejudice for purposes of demonstrating ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).  For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Conner was charged with first degree murder, grand theft, forgery, and destruction, alteration, or concealment of evidence after he reported finding his eighty-seven-year-old father (Father) dead in the garage of the home they shared.  Conner indicated to the police that when he arrived home he found his Father had fallen from a ten-foot ladder while apparently trying to retrieve items from an attic storage area and hit his head on the concrete floor.  After an initial investigation, including discussions with other family members who expressed concern that the

death may not have been caused by a fall, the police obtained and executed a search warrant for Conner's residence.

Detectives found blood stains on numerous items throughout the home, including the claw of a hammer. Forensic investigators also performed tests which indicated the presence of drag marks throughout the home. Based on these findings, the State theorized that Conner hit Father on the head with a hammer in the living room, dragged his body to the garage, and staged an accident using the ladder. Based on discussions with family members and financial records obtained in the course of the investigation, the State posited that Conner's motive was financial gain.

The State enlisted three experts to support its theory: Tom Bevel, a forensic scientist specializing in bloodstain pattern analysis; Dr. Groben, a forensic pathologist for the Ada County Coroner's office; and Dr. Smock, a medical doctor. Bevel testified he believed the evidence showed Father had not died as the result of an accident, but that he had been killed by several blows to the head. Dr. Groben testified that he believed Father died as the result of a homicide. Dr. Smock testified that he believed Father's injuries were consistent with homicide and inconsistent with falling from a ladder. Dr. Smock testified after Dr. Groben. Dr. Smock's testimony would be challenged at trial and is the subject of Conner's post-conviction claim of ineffective assistance of counsel. First, in addressing the amount of force it would take to cause the injuries found on Father's body, Dr. Smock referenced Dr. Groben's testimony regarding blood in the left ear being an indication of a skull fracture at the bottom of the skull. Second, Dr. Smock testified that Father had a "superficial abraded area" in addition to the three obvious lacerations on his head. Third, he testified that the perpendicular nature of two of the lacerations on Father's head was inconsistent with falling from a ladder. Fourth, Dr. Smock stated that Father had a laceration on his left hand consistent with a defensive wound. Fifth, that the amount of blood found in the home was inconsistent with Conner's story that Father had previously tried to clean up his own blood. Sixth, Dr. Smock discussed the evidence showing Father's body had been moved, indicating a staged scene. On cross-examination, Dr. Smock said that he learned about Dr. Groben's testimony from the prosecutor. Dr. Smock finished testifying on a Friday.

The following Monday, Conner filed a motion to strike the entirety of Dr. Smock's testimony. Conner argued the State violated the district court's order prohibiting witnesses from

2

discussing or sharing their testimony when the prosecutor told Dr. Smock about Dr. Groben's testimony regarding the basilar skull fracture. Further, Conner argued that Dr. Smock had, in his other testimony, offered opinions that went beyond the scope of his report, violating expert disclosure requirements. The district court denied Conner's motion as untimely because the motion should have been made at the time of the testimony. The district court also noted that it was not convinced Dr. Smock's testimony was influenced by anything other than his own opinion, which he stated on the record.

The jury found Conner guilty of second degree murder and destruction, alteration, or concealment of evidence, but was unable to reach a verdict on the other charges. At sentencing, the district court, upon motion by the State, dismissed the grand theft and forgery charges. The district court entered judgment against Conner and sentenced him to a unified term of thirty years with eighteen years determinate on the second degree murder conviction, and imposed a concurrent sentence of five years determinate on the destruction, alteration, or concealment of evidence conviction. Conner timely appealed from the judgment and this Court affirmed. *State v. Conner*, 161 Idaho 502, 387 P.3d 170 ( Ct. App. 2016).

Conner timely filed a petition for post-conviction relief, which he subsequently amended. Conner alleged, among other things, that his trial counsel was ineffective for delaying objections related to Dr. Smock's testimony. Conner alleged that had counsel raised these objections at the time the testimony was given Dr. Smock's testimony would have been struck in its entirety, and without Dr. Smock's testimony, the jury would have acquitted Conner. The State argued Conner failed to sufficiently allege either deficient performance or prejudice under *Strickland* and moved the district court to summarily dismiss Conner's petition. The district court granted the State's motion. The district court found that had Conner's counsel timely objected at trial to Dr. Smock's testimony, the objection would have been sustained in part. The court held that it would have striken the testimony related to the basilar skull fracture because it violated the order prohibiting witnesses from sharing testimony. The district court also found it would have stricken Dr. Smock's testimony related to the superficial abraded area and the defensive wounds because this testimony exceeded the scope of Dr. Smock's report. However, the district court found it would have allowed the remainder of Dr. Smock's testimony. Further, the court would not have struck the entirety of Dr. Smock's testimony, but only those three subjects found to be improper. Based on these findings, the district court agreed Conner had failed to sufficiently

3

allege *Strickland* prejudice because the result of the trial would have been the same absent the excludable testimony. Accordingly, it summarily dismissed Conner's petition. Conner timely appeals.

## II.

## STANDARD OF REVIEW

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations, or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free

to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the state does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. Over questions of law, we exercise free review. *Rhoades*, 148 Idaho at 250, 220 P.3d at 1069; *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

### III.

### ANALYSIS

Conner argues the district court erred in summarily dismissing his petition for post-conviction relief. That State counters the petition was properly dismissed because Conner's allegations did not justify relief under *Strickland*. A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*,

148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland*, 466 U.S. at 687-88; *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011). In order to survive a motion for summary dismissal, post-conviction relief claims based upon ineffective assistance of counsel must establish the existence of material issues of fact as to both *Strickland* prongs. *State v. Dunlap*, 155 Idaho 345, 383, 313 P.3d 1, 39 (2013).

As noted, the district court determined that the State violated the district court's exclusion order[1] by advising Dr. Smock of Dr. Groben's testimony regarding the basilar skull fracture:

> By informing Dr. Smock of the testimony of Dr. Groben, the State violated the Court's exclusion order. The language of the order is plain and explicit. Contrary to the State's arguments, there is no blanket exception for expert witnesses under Rule 615. The State did not ask for an exception for its expert witness either at the pre-trial hearing, on the order itself, or during trial. The State suggests that the need to be certain the expert witnesses are basing their testimony on the most accurate information trumps a court's exclusion order. This argument is without merit. The State should have either refrained from discussion of trial evidence with Dr. Smock or sought a modification of the exclusion order. Alternatively, the State should have supplemented its expert disclosure under Rule 16(j).

---

[1]     The order provided that:

> Witnesses will be excluded from the court room during the trial of this matter except during the witnesses' own testimony. Witnesses are prohibited from discussing their testimony or anticipated testimony with any other witness or prospective witness during the entire course of the trial.

> *. . . .*
> *Had the motion been timely made, that bit of testimony would have been excluded, but not Dr. Smock's entire testimony.*

(Emphasis added.) As to the objection to Dr. Smock's testimony regarding the superficial abraded area exceeding the scope of his report, the district court held:

> Dr. Smock explained in his written report that he would be discussing three specific head wounds. The "superficial abraded area" was not one of those. This observation should have been included in Dr. Smock's report. Had the motion been timely made, the Court would have excluded it.

With respect to the defensive wounds on Father's finger, the district court held:

> Not only was the photo of the hand not contained in Dr. Smock's report, but there was no discussion or opinion about the victim's hand in the report. It may be that this is part of the forensic evidence to which Dr. Smock references in his report, but the testimony regarding the significance of the wound and the opinion that they reflect defensive wounds was not. In his disclosure, Dr. Smock discussed only the head wounds; he makes no reference to the finger wound. This testimony was beyond the scope of the disclosure. Had the motion been timely made at trial, the evidence would have been excluded.

The district court held that it would not have stricken all of Dr. Smock's testimony, but only those areas discussed above.[2] Further, the district court found that Conner had failed to sufficiently demonstrate prejudice from the excludable testimony:

> Even with the absence of the testimony that should have been excluded, the Court is convinced the outcome of the trial would have been the same. A defendant is entitled to a fair trial, not a perfect trial. Conner has not shown there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Matthews v. State*, 130 Idaho 39, 43, 936 P.2d 682, 685 (Ct. App. 1997).

On appeal, Conner argues that the district court erred when it summarily dismissed his petition after finding that he could not sufficiently demonstrate prejudice under *Strickland*. Conner does not challenge the district court's holding that, other than the three instances discussed above, there was no other excludable testimony from Dr. Smock. Conner does not contend that the district court applied an incorrect standard in summarily dismissing the petition.

---

[2] The State argues that the district court erroneously determined Conner's allegations were sufficient to sustain a prima facie claim that counsel did not make a tactical decision. Specifically, to engage in cross-examination and thereby attack the credibility of the prosecutor and later move to strike all of the testimony was tactical on the part of trial counsel. We need not address whether the district court erred by failing to find that Conner did not exclude a tactical or strategic choice by trial counsel to delay the objection as we agree that prejudice is lacking.

Conner argues, and we will discuss below, prejudice from the excludable testimony, prejudice from cumulative error and prejudice from the context of Dr. Smock's entire testimony in relation to the trial evidence. The district court considered and rejected Conner's arguments and we agree.

## A.     The ExcludableTestimony

On appeal, Conner does not seriously contend that the individual bits of testimony that the district court held would have been excluded, in themselves, are sufficient to show prejudice. Nor could he. In regard to Dr. Smock's testimony on the basilar skull fracture, the district court determined that the testimony could not have affected the outcome of the trial because it was relatively insignificant and duplicative of other testimony. We agree. Dr. Smock's testimony regarding the basilar skull fracture was nearly identical to the testimony of Dr. Groben, who testified about the nature of the fracture and that he believed it was caused by blunt force trauma. Erroneously admitted evidence is harmless when largely duplicative of admissible and admitted evidence. *State v. Sandoval-Tena*, 138 Idaho 908, 912, 71 P.3d 1055, 1059 (2003). Moreover, Dr. Smock explicitly stated that his testimony regarding the fracture was a product of Dr. Groben's testimony. As the State points out, this testimony could not have affected the verdict because its credibility was completely dependent upon whether the jury believed the testimony of another expert whose testimony is not at issue. The apparent purpose of Dr. Smock's testimony was to support the State's theory that Father had not died from a fall but had been killed by blunt force trauma to the head, namely by being struck repeatedly with a hammer. Accordingly, Dr. Smock's discussion centered around the four lacerations on Father's head being consistent with an attack. The basilar skull fracture was much less indicative of mode of attack as it was force. Because Dr. Smock's testimony on the basilar skull fracture was largely duplicative and relatively insignificant in the context of his entire testimony, we cannot say it was prejudicial.

In regard to Dr. Smock's testimony on the defensive wound found on Father's hand, the district court determined that Conner failed to sufficiently allege prejudice. As the State points out, the testimony could not have affected the verdict for three reasons: first, similar testimony was elicited by Conner's counsel during cross-examination; second, Bevel testified about the defensive wound making Dr. Smock's testimony duplicative; and third, like the basilar skull fracture, the defensive wound testimony was relatively insignificant compared to the rest of

8

Dr. Smock's testimony. As to the first issue, Conner cannot complain about testimony that duplicates testimony elicited by his own counsel on cross-examination. When Conner's counsel chose to pursue a line of questioning which sought to explain why the wounds on Father's head were not consistent with the claw of a hammer, he elicited the following testimony: "the reason we don't see two [marks] is because the other claw was blocked by the finger resulting in that laceration." Conner cannot denounce testimony which he elicited. *State v. Gleason*, 123 Idaho 62, 66, 844 P.2d 691, 695 (1992). Accordingly, if that testimony is duplicative of the testimony he now challenges, we cannot see how that testimony affected the verdict. Similarly, Conner cannot properly challenge the testimony of the defensive wound as being prejudicial when it is largely duplicative of another expert's testimony. Bevel testified as follows: "the three-quarter-inch cut on the tip of [Father's] left index finger was consistent with a defensive wound." This testimony renders any issue with Dr. Smock's substantially similar testimony harmless. If the purpose of Dr. Smock's testimony was to support the State's theory of an attack versus a fall from a ladder, any discussion about a defensive wound would be relatively insignificant, especially in the context of the other evidence. For all of these reasons, we cannot say Conner has demonstrated Dr. Smock's testimony regarding the defensive finger wound was prejudicial to the outcome of his trial.

Finally, in regard to Dr. Smock's testimony on the superficial abraded area on Father's head, Dr. Smock's discussion of the superficial abraded area is relatively insignificant, does not appear to be an observation upon which Dr. Smock's opinion is based, and was not significantly relied upon to reach his opinion. The superficial abraded area, which was the least prominent and least discussed of the wounds found on Father's body, cannot be said to be more critical to the State's case than the basilar skull fracture or the defensive finger wound. Conner makes very little effort, if any, to allege how this particular piece of testimony prejudiced him. Without such an argument, we cannot say it affected the outcome of the verdict or prejudiced him for purposes of *Strickland*.

## B.      Cumulative Error

Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *Bias v. State*, 159 Idaho 696, 705, 365 P.3d 1050, 1059 (Ct. App. 2015) (citing *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012)). The district court analyzed the three instances of excludable testimony and held that

9

even in the absence of that testimony, the outcome of the trial would be the same. To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. Thus, the district court considered the cumulative impact of the excludable testimony and found that Conner could not establish prejudice from that testimony. Conner, again, does not seriously argue that the cumulative impact of the three instances of excludable testimony is sufficient to allege prejudice. Nor could he. As set forth above, the testimony was largely duplicative, of little significance, and did not alter Dr. Smock's overarching opinion that the victim's lethal injuries were caused by a hammer and the death was not an accident.

## C.      The Context of Dr. Smock's Testimony

Conner's primary argument on appeal regarding prejudice centers upon a claim that the violation of the exclusion order was done in "bad faith" and amounted to Dr. Smock being "coached" by the prosecutor so as to remedy inconsistencies in the State's prior expert witnesses' testimony. Conner complains that "the court simply excised the few things it stated it would have struck from Dr. Smock's testimony and held it wouldn't have changed the outcome." Conner asserts the State's bad faith was a last ditch effort to rectify the "problems . . . [it] perceived it had" with contradictory expert testimony:

> While the court recognizes that the defense had moved to strike Dr. Smock's testimony in its entirety, it never addresses why. But what really happened is that the defense basically argued a bad faith violation of the rule of exclusion of witnesses on the part of the state undertaken in order to remedy inconsistencies between the testimony between the state's prior expert witnesses which led to the new opinions by Dr. Smock which were outside the scope of his disclosure.

Conner's assertion that he *basically* argued bad faith below is neither accurate nor enough to preserve the issue on appeal. Conner neither asked for nor obtained a finding from the district court that the State acted in bad faith. Moreover, Conner did not cite to the district court's, or this Court's, legal argument supporting the claim that bad faith warrants striking the entirety of a witnesses' testimony or that the district court abuses its discretion in failing to do so. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) ("When issues on appeal are not supported by propositions of law, authority, or argument, they will not be considered."). The

same deficiencies apply to Conner's unsupported claim that the State "apparently coached" Dr. Smock in his testimony.

Next, we address, as the district court did, Conner's claim that the violations were used to intentionally tie up inconsistencies among the other expert witnesses. The district court held:

> Conner argues that the violation of the exclusion order gave Dr. Smock the opportunity to reconcile the inconsistency between his testimony and that of Dr. Groben. The Court disagrees. In fact, some of Dr. Smock's testimony contradicted Dr. Groben's testimony. Dr. Groben testified that one of the injuries was not, in his opinion, the result of a blow from the claw of a hammer, but from a flat surface. Trial counsel made this point on cross-examination. At all times, Dr. Smock opined that the victim's death was not an accident and that the injuries were caused by a hammer.

In addition, the district court stated:

> Conner argues that he was prejudiced because Dr. Smock was a pivotal and critical witness for the State. He shored up the testimony of Dr. Groben and he helped form a forensic bridge between Dr. Groben's testimony and Dr. Bevel's testimony. The Court disagrees. The State has explained in detail the testimony of the other two experts, Dr. Bevel and Dr. Groben. That discussion will not be repeated here. The testimony of Dr. Smock may have been a bridge, but the excluded testimony is not the deck or girders of the bridge. The evidence does not support the argument that Dr. Smock altered his testimony to conform to Dr. Groben's opinion. In fact, some of Dr. Smock's testimony contradicted Dr. Groben's testimony.

We agree with the district court. As noted, the exclusable testimony was relatively insignificant. It did not tie up inconsistencies among the other expert witnesses, but was contrary in some ways. Most importantly, the testimony at issue does not go to the heart of Dr. Smock's opinion or the State's theory; namely, that Father was killed with a hammer as opposed to falling from a ladder. Conner has failed to demonstrate a prima facie case of ineffective assistance of counsel under the prejudice prong of *Strickland*. The district court did not err in summarily dismissing Conner's petition for post-conviction relief.

## IV.
## CONCLUSION

The district court did not err when it determined Conner failed to sufficiently allege prejudice for *Strickland* purposes. Therefore, the order summarily dismissing Conner's petition for post-conviction relief is affirmed.

Chief Judge HUSKEY and Judge BRAILSFORD **CONCUR**.

11